**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

_____

ASARCO LLC, a Delaware limited liability company

       Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation;
UNION PACIFIC CORPORATION, a Utah corporation;
PEPSI-COLA METROPOLITAN BOTTLING CO., INC., a New Jersey corporation;
BOTTLING GROUP, LLC, a Delaware limited liability company

       Defendants.

_____

**COMPLAINT**
_____

Plaintiff, ASARCO LLC ("Asarco"), for its Complaint, states and alleges:

**NATURE OF THE ACTION**

1.      Over thirty years ago, Congress enacted the Comprehensive Environmental

Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. ¶¶ 9601-9675

("CERCLA"), to promote the cleanup of the environment after over 200 years of industrial

development in the United States.  Key to this cleanup scheme is that environmental remediation

does not need to wait for final allocation of liability – settlements are favored and cleanup often

precedes allocation.  Both governmental and private parties can seize the initiative to remediate a

site.  Congress has determined that those who first pay to clean up can later recover costs from

other parties responsible for contamination at a site that have failed to act.

{00137221.4}

2.      This is a civil action brought by Asarco pursuant to CERCLA for contribution, subrogation, and cost recovery against Defendants for costs incurred by Asarco and Asarco's predecessor-in-interest, the former debtor-in-possession ASARCO LLC (the "Debtor"), at the Vasquez Boulevard and I-70 Site (the "Vasquez Site").

3.       Asarco has paid over $1.8 million pursuant to the Debtor's settlement of its asserted environmental-related liabilities at the Vasquez Site, which is more than the Debtor's fair share of costs.

JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action and the Defendants, pursuant to 28 U.S.C. §§ 1331 and 1367(a), and Sections 107, 112, and 113 of CERCLA, 42 U.S.C §§ 9607, 9612, and 9613.

5.      Venue is proper in this judicial district pursuant to 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(b), and 28 U.S.C. §§ 1391(b) because the claims arose and the threatened and actual releases of hazardous substances occurred within the District of Colorado.

PLAINTIFF

6.      Asarco is a limited liability company organized under the laws of the State of Delaware.

7.      The Debtor or its predecessors owned and operated an historic smelting and refining facility in Globeville, Colorado.  The Debtor has settled, and, pursuant to CERCLA and the plan of reorganization that was confirmed under the Bankruptcy Code by the United States District Court for the Southern District of Texas (the "Plan"), plaintiff Asarco has paid, all of the

liabilities to the State of Colorado, the City and County of Denver, and the United States

Environmental Protection Agency ("EPA") for any "releases" under CERCLA Section 107(a), *et seq.*, 42 U.S.C. § 9607(a), *et seq.*, arising from the Debtor and its predecessors' historic smelting

operations that may have impacted the Vasquez Site.

8.     Asarco now seeks contribution under CERCLA from Defendants, directly and as

subrogee of the Debtor, in an amount and proportion to be determined at trial to be the

Defendants' fair and equitable share of these liabilities.

## DEFENDANTS

9.     Defendant Union Pacific Railroad Company is a Delaware Corporation.

10.     Defendant Union Pacific Corporation is a Utah corporation.   Union Pacific

Railroad Company and Union Pacific Corporation, together with any and all of their

predecessors-in-interest and subsidiaries, are referred to collectively as "Union Pacific."

11.     Union Pacific owned and operated facilities at or near to the Vasquez Site.

12.     Union Pacific has conducted storage, transport and/or related operations through

facilities in or near the Vasquez Site.   Union Pacific is an "owner" and/or "operator" of a

"facility" and "arranged for disposal or treatment . . . of hazardous substances" pursuant to

Sections 101(9) and (20) and 107(a)(1), (a)(2) and (a)(3) of CERCLA, 42 U.S.C. §§ 9601(9) and

(20) and 9607(a)(l), (a)(2), and (a)(3).

13.     Union Pacific has owned or operated manufacturing, storage, transport and/or

related operations of or for hazardous substances through facilities in or near the Vasquez Site.

Union Pacific is responsible for multiple releases of hazardous substances at or near the Vasquez

Site which have come to be located at the Vasquez Site.  Asarco has paid for the remediation of such hazardous substances through a judicially approved settlement.

14.     On information and belief, Union Pacific's actions within the Vasquez Site resulted in arsenic, lead, and other contamination in soil, surface water, and groundwater located within the Site. Based on these actions, Union Pacific is responsible under CERCLA for the costs to remediate the environmental harm caused by these actions.  On information and belief, Union Pacific constructed and/or maintained rail beds, including those within the Vasquez Site, out of mining wastes, slag, and/or chat that contained hazardous substances.  As a result of precipitation, flooding, leaching of surface and groundwater through these rail beds, erosion of the rail beds themselves, and through airborne displacement, those hazardous substances have been released into the environment.

15.      In addition, the operation of these rail lines and the transport, disposal, handling and use of hazardous substances resulted in release of hazardous substances within the Vasquez Site.

16.     Defendant Pepsi-Cola Metropolitan Bottling Co., Inc., is a New Jersey corporation.

17.     Defendant Bottling Group, LLC, is a Delaware limited liability company.  Pepsi-Cola Metropolitan Bottling Co., Inc., and Bottling Group, LLC, together with any and all of their predecessors-in-interest and subsidiaries, are referred to collectively as "Pepsi."

18.     Pepsi owned and operated facilities at or near to the Vasquez Site.

19.     Pepsi has conducted storage, transport and/or related operations through facilities in or near the Vasquez Site.  Pepsi is an "owner" and/or "operator" of a "facility" and "arranged

for disposal or treatment . . . of hazardous substances" pursuant to Sections 101(9) and (20) and

107(a)(1), (a)(2) and (a)(3) of CERCLA, 42 U.S.C. §§ 9601(9) and (20) and 9607(a)(l), (a)(2),

and (a)(3).

20.     Pepsi has owned or operated manufacturing, storage, transport and related

operations of or for hazardous substances through facilities in or near the Vasquez Site.  Pepsi is

responsible for multiple releases of hazardous substances at or near the Vasquez Site which have

come to be located at the Vasquez Site.  Asarco has paid for the remediation of such hazardous

substances through a judicially approved settlement.

21.     Each Defendant listed above is a "person," within the meaning of Section 101(21)

of CERCLA, 42 U.S.C. § 9601(21).

22.     Defendants are major potentially responsible parties ("PRPs") under CERCLA at

the Vasquez Site.

23.     Defendants are persons who are liable for owning and/or operating facilities at or

from which hazardous substances were disposed under 42 U.S.C. § 9607(a)(2), for arranging

transport or disposal of hazardous substances under 42 U.S.C. § 9607(a)(3), and/or transporting

hazardous substances at the Vasquez Site under 42 U.S.C. § 9607(a)(4).

**STATUTORY FRAMEWORK**

24.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(1)     the owner and operator of a vessel or a facility,
(2)     any person who at the time of disposal of any hazardous substance
        owned or operated any facility at which such hazardous substances
        were disposed of,
(3)     any person who by contract, agreement, or otherwise arranged for
        disposal or treatment, or arranged with a transporter for transport
        for disposal or treatment, of hazardous substances owned or
        possessed by such person, by any other party or entity, at any

5

> facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4)    any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, or a hazardous substance, shall be liable for –

    (A)    all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

    (B)    any other necessary costs of response incurred by any person consistent with the national contingency plan . . . .

25.    Section 107(e) of CERCLA, 42 U.S.C. § 9607(e), provides in pertinent part:

(1)    No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.  Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

(2)    Nothing in this title, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

26.    Section 112(c)(2) of CERCLA, 42 U.S.C. § 9612(c)(2), provides in pertinent part:

(2)    Any person, including the Fund, who pays compensation pursuant to this Act to any claimant for damages or costs resulting from a release of a hazardous substance shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this Act or any other law.

27.    Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), provides in pertinent part:

(1)    Contribution
Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) . . .

(3)    Persons not party to settlement

(B)     A person who has resolved its liability to the United States
or a State for some or all of a response action or for some
or all of the costs of such an action in an administrative or
judicially approved settlement may seek contribution from
any person who is not a party to a settlement . . . .

28.     As explained more fully herein, Defendants owned or operated manufacturing,

storage, transport, and/or related operations through facilities in or near the Vasquez Site, and

each was thus an "owner" and/or "operator" of these "facilities" pursuant to Sections 101(9) and

(20) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(9) and (20) and 9607(a)(2).  Each defendant

may also be liable as an "arranger" or "transporter" of hazardous substances pursuant to Sections

107(a)(3) and (4) of CERCLA, 42 U.S.C. §§ 9607(a)(3) and (4).

## SITE DESCRIPTION AND FACTUAL BACKGROUND

29.     The Vasquez Site is an area of approximately four square miles located in north-

central Denver.  Historically this area was a major smelting center for the Rocky Mountain West.

Three smelting plants – Omaha and Grant; Argo; and Globe – operated in the area for varying

lengths of time, beginning as early as 1870, refining gold, silver, copper, lead, and zinc.  The

Debtor or its predecessors owned and operated the Omaha and Grant smelter.

30.     The Vasquez Site was divided into three Operable Units ("OUs") by EPA.  OU1

focuses on residential soils and included all or parts of the following north Denver

neighborhoods:  Cole, Clayton, Swansea, Elyria, Globeville, and a small section of Curtis Park.

EPA and the Colorado Department of Public Health and the Environment ("CDPHE") began

investigating these residential yards in 1998 to determine if arsenic, lead, cadmium, or zinc

residues from past smelting operations posed a potential threat to the health of residents.  The

investigation showed that lead and arsenic were the heavy metals of concern, and sampling

results showed elevated lead and arsenic concentrations in some yards.  A large-scale residential

soils investigation and cleanup ensued.  This effort was completed in August 2006.

31.      OU2 of the Vasquez Site is the area where the Omaha and Grant Smelter was

located.  Wastes generated from the historic smelter operation may still exist and may impact the

soils, surface water, and groundwater or be a health concern.

32.      OU3 of the Vasquez Site is the area where the Argo Smelter operated. The

historic smelter buildings have been demolished and the area has been redeveloped.  EPA is

investigating whether smelter generated wastes were buried at the Vasquez Site and whether they

pose a health risk to future construction workers or groundwater.

33.      The Vasquez Site CERCLA enforcement action was pending against Debtor on

August 9, 2005, when Debtor filed a voluntary petition for relief under Chapter 11 of the United

States Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas (the

"Bankruptcy Court").

34.      In 2006 EPA furthered its enforcement action against Debtor by filing certain

proofs of claim and initial submissions in Debtor's bankruptcy case (the "Enforcement Action").

Alleging that Debtor was responsible for contamination at the Vasquez Site under CERCLA,

EPA sought recovery from Debtor of the entire liability alleged for the Vasquez Site.

35.      In 2009 Asarco filed a motion in the Bankruptcy Court for approval of a

settlement pursuant to CERCLA whereby Asarco would pay the United States and City and

County of Denver over $1.5 million to resolve its CERCLA liabilities at the Vasquez Site

("Vasquez Site Settlement").  The Vasquez Site Settlement was approved by the Bankruptcy

Court and United States District Court. The Vasquez Site Settlement was to be funded upon court approval of a plan of reorganization.

36.     The amounts paid by Asarco represent far more than the Debtor's fair share of liabilities at the Vasquez Site.

37.     On November 13, 2009, the United States District Court for the Southern District of Texas adopted the Bankruptcy Court's report and recommendation and confirmed the Plan in its entirety (the "Confirmation Order"). The Plan and Confirmation Order required Asarco to pay, among other claims, the Vasquez Site claim in full with accrued interest on the effective date of the Plan ("Effective Date"). Once the Plan became effective, Asarco paid the Vasquez Site claim in full.

38.     Thus, the Vasquez Site Settlement constitutes a judicially approved settlement which stems from enforcement action taken pursuant to Section 106 or Section 107 of CERCLA.

39.     In addition, upon the Effective Date, in accordance with the Plan's terms, the Debtor's CERCLA contribution causes of action against Defendants vested in Asarco. The Plan granted Asarco sole authority and standing to pursue such causes of action.

40.     Section 10.13 of the Plan provides that "[a]ny and all claims and causes of action that were owned by [the Debtor] or its Estate as of the Effective Date . . . , including, without limitation, for indemnity and contribution for environmental damages, harm or injury . . . shall vest in Reorganized Asarco on the Effective Date, and Reorganized Asarco shall be the only Entity entitled to pursue such claims or causes of action." Section 12.3 of the Plan further provides that "[e]xcept as otherwise expressly provided [herein], [Asarco] shall [not] be deemed a successor or successor-in-interest to any of the Debtors or to any Entity for which the Debtors

may be held legally responsible, by reason of any theory of law or equity, and [Asarco] shall

[not] be responsible for any successor or transferee liability of any kind or character . . . ."

## FIRST CLAIM FOR RELIEF

## (CLAIM FOR CONTRIBUTION UNDER SECTION 113(f) OF CERCLA)

41.     Plaintiff incorporates by reference paragraphs 1 through 40 as if fully set forth

herein.

42.     The Vasquez Site and surrounding areas are "facilities" within the meaning of

Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

43.     Defendants Union Pacific and Pepsi disposed of, placed, released, or otherwise

caused "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. §

9601(14), to become located at the Vasquez Site at times relevant to this action.

44.     Union Pacific and Pepsi are responsible for disposals or "releases" within the

meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) into the environment at or from

the Vasquez Site at times relevant to this action.

45.     Response costs for the Vasquez Site are consistent with the National Contingency

Plan (the "NCP"), pursuant to Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B) and

implementing regulations.

46.     Any person may seek contribution from any other person who is liable or

potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), 42 U.S.C.

§ 9613(f)(1).

47.     A person is liable under Section 107(a) of CERCLA if the person owned or operated any facility at which such hazardous substances were disposed.  42 U.S.C. § 9607(a)(2).

48.     A person is liable under Section 107(a) of CERCLA if the person arranged, by contract or otherwise, with a transporter for transport or disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.  42 U.S.C. § 9607(a)(3).

49.     A person is liable under Section 107(a) of CERCLA if the person accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs.  42 U.S.C. § 9607(a)(4).

50.     Defendants are "persons" who are liable for owning and/or operating facilities at or from which hazardous substances were disposed under 42 U.S.C. § 9607(a)(2), for arranging transport or disposal of hazardous substances under 42 U.S.C. § 9607(a)(3), and/or transporting hazardous substances in or near the Vasquez Site under 42 U.S.C. § 9607(a)(4).

51.     Asarco has resolved CERCLA liability for response action with the United States through the judicially approved bankruptcy reorganization and may seek contribution pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

52.     To date, Asarco has incurred approximately $1.8 million for response action consistent with the NCP pursuant to 42 U.S.C. § 9607(a)(4)(B).  This amount represents more

than the Debtor's allocable share of costs related to its releases or disposal of hazardous substances in or near the Vasquez Site.

53.     Because Defendants qualify as responsible parties under CERCLA § 107(a), Defendants are liable for their respective equitable shares of any overpayment incurred by Asarco.

## SECOND CLAIM FOR RELIEF

### (CLAIM AS SUBROGEE OF THE DEBTOR UNDER CERCLA SECTIONS 107, 112, AND/OR 113 FOR CONTRIBUTION AT THE VASQUEZ SITE)

54.     Plaintiff incorporates by reference paragraphs 1-53 as if fully set forth herein.

55.     Asarco, pursuant to CERCLA and the Plan, paid at least $1.8 million to satisfy the Debtor's environmental liabilities regarding the Vasquez Site and acquired the Debtor's right to seek contribution from other potentially responsible parties at the Vasquez Site.

56.     Asarco, by operation of CERCLA, bankruptcy law, relevant state law, and the Plan, is the legal and equitable subrogee of the Debtor with respect to the Debtor's claims concerning the Vasquez Site.

57.     Pursuant to CERCLA Sections 107, 112, and 113, Asarco, as subrogee and guarantor of the Debtor, has the right to assert a claim for contribution against Defendants based on its payment of the Debtor's environmental liabilities at the Vasquez Site and its corresponding acquisition of the Debtor's right to seek contribution from other potentially responsible parties.

58.     Asarco is entitled to contribution from Defendants, jointly and severally, in a proportion and to an extent to be determined at trial to be the fair and equitable allocation attributable to Union Pacific pursuant to Section 113(f)(1) of CERCLA.

59.     Asarco is entitled to contribution from Defendants, jointly and severally, in a

proportion and to an extent to be determined at trial to be the fair and equitable allocation

attributable to Pepsi pursuant to Section 113(f)(1) of CERCLA.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and

against Defendants:

A.     Ordering Defendants to pay contribution to Plaintiff in a sum to be determined by

the Court to be owed to Plaintiff for response costs, plus interest to the maximum

extent permitted by law;

B.     Awarding Plaintiff its costs and attorneys' fees; and

C.     Awarding Plaintiff all other relief that the Court deems appropriate.

DATED: December 10, 2012                    Respectfully submitted,

By: s/ Stephen A. Bain
Stephen A. Bain
Welborn Sullivan Meck & Tooley, P.C.
1125 17th Street, Suite 2200
Denver, CO 80202
Telephone: 303-830-2500
Facsimile:  303-832-2366
sbain@wsmtlaw.com

Gregory Evans
CA Bar No. 147623
JAMES G. WARREN
CA Bar No. 231788
Integer Law Corporation
811 W. 7th Street, Twelfth Floor
Los Angeles, California 90017
Telephone: (213) 627-2268
Facsimile:  (213) 627-2579
gevans@integerlegal.com
jwarren@integerlegal.com
(Will be applying for admission)

Attorneys for ASARCO LLC

13