IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03216-REB-MJW

ASARCO LLC, a Delaware limited liability company,

Plaintiff(s),

v.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation;
UNION PACIFIC CORPORATION, a Utah corporation;
PEPSI-COLA METROPOLITAN BOTTLING CO., INC., a New Jersey corporation; and
BOTTLING GROUP, LLC, a Delaware limited liability company,

Defendant(s).

**RECOMMENDATION ON
DEFENDANTS UNION PACIFIC RAILROAD COMPANY'S AND UNION PACIFIC
CORPORATION'S MOTION TO DISMISS (Docket No. 20)
and
DEFENDANT PEPSI-COLA METROPOLITAN BOTTLING CO., INC'S AND
BOTTLING GROUP, LLC'S MOTION TO DISMISS (Docket No. 27)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order Referring Case issued by Judge Robert E. Blackburn on December 11, 2012. (Docket No. 9).

This action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), for contribution, subrogation, and cost recovery against defendants "for costs incurred by Asarco and Asarco's predecessor-in-interest, the former debtor-in possession ASARCO LLC (the "Debtor"), at the Vasquez Boulevard and I-70 Site (the 'Vasquez Site')." (Compl., Docket No. 2 at 2, ¶ 2). The Vasquez Site is described in

the Complaint as "an area of approximately four square miles located in north-central Denver. Historically this area was a major smelting center for the Rocky Mountain West. Three smelting plants - Omaha and Grant; Argo; and Globe - operated in the area for varying lengths of time, beginning as early as 1870, refining gold, silver, copper, lead, and zinc. The Debtor or its predecessors owned and operated the Omaha and Grant smelter." (Docket No. 2 at 7, ¶ 29). The EPA divided the Vasquez Site into three Operable Units. (Docket No. 2 at 7, ¶ 30). The first focused on residential soils, and an investigation by the EPA and the Colorado Department of Public Health and the Environment, which began in 1998, and lab results showed elevated lead and arsenic concentrations in some yards. A large-scale residential soils investigation and cleanup was completed in August 2006. (Docket No. 2 at 7-8, ¶ 30). The second operable unit of the Vasquez Site is the area where the Omaha and Grant Smelter was located, and wastes generated from this operation may still exist and may impact the soils, surface water, and groundwater or be a health concern. (Docket No. 2 at 9, ¶ 31). The third operable unit is the area where the Argo Smelter operated. The smelter buildings have been demolished, and the area has been redeveloped. The EPA is investigating whether smelter-generated wastes were buried at the Vasquez site and whether they pose a health risk to future construction workers or groundwater. (Docket No. 2 at 8, ¶ 32).

According to the Complaint, on August 9, 2005, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas. (Docket No. 2 at 8, ¶ 33). The Vasquez Site CERCLA enforcement action was pending at that time. In 2006 the EPA

filed proofs of claim and initial submissions in the bankruptcy case, seeking recovery from the Debtor of the entire liability alleged for the Vasquez Site. (Docket No. 2 at 8, ¶ 34). "In 2009 Asarco filed a motion in the Bankruptcy Court for approval of a settlement pursuant to CERCLA whereby Asarco would pay the United States and City and County of Denver over $1.5 million to resolve its CERCLA liabilities at the Vasquez Site . . . . [This] Settlement was approved by the Bankruptcy Court and United States District Court . . . [and] was to be funded upon court approval of a plan or reorganization." (Docket No. 2 at 8-9, ¶ 35). On November 13, 2009, the United States District Court for the Southern District of Texas adopted the Bankruptcy Court's report and recommendation and confirmed the Plan in its entirety. That Confirmation Order and the Bankruptcy Plan required Asarco to pay, among other claims, the Vasquez Site claim in full with accrued interest on the effective date of the Plan, and Asarco made that payment. (Docket No. 2 at 9, ¶ 37).

"Asarco now seeks contribution under CERCLA from Defendants, directly and as subrogee of the Debtor, in an amount and proportion to be determined at trial to be the Defendants' fair and equitable share of these liabilities." (Docket No. 2 at 3, ¶ 8). Plaintiff asserts two claims: first, a direct contribution claim under CERCLA § 113(f), and second, a claim as subrogee of the Debtor under CERCLA §§ 107, 112[1] and/or 113 for contribution at the Vasquez Site.

Now before the court are two motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The first is brought by defendants Union Pacific Railroad Company and

---

[1] Plaintiff has since withdrawn its request for relief under CERCLA § 112(c). See Docket No. 37 at 3 n.3.

4

Union Pacific Corporation ("Union Pacific")[2] (Docket No. 20), and the second is brought by defendants Pepsi-Cola Metropolitan Bottling Co., Inc., Bottling Group, LLC ("Pepsi")[3] (Docket No. 27). Plaintiff filed a Response to both motions (Docket Nos. 37 and 40), and the defendants filed Replies (Docket Nos. 44 and 45). The court has carefully considered all of these motions papers and has considered applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that both motions be granted.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The court's

---

[2]The Union Pacific defendants note that Union Pacific Corporation serves solely as the holding company for Union Pacific Railroad Company's shares, and they assert that plaintiff has made no separate allegations against the Corporation. They object to plaintiff's approach but do not distinguish between the entities in their motion to dismiss. (Docket No. 20 at 1, n.1).

[3]The Pepsi defendants note that "Defendant Pepsi-Cola Metropolitan Bottling Co., Inc. owns an interest in Defendant Bottling Group, LLC. Bottling Group, LLC owns property and operates a facility on property which is not located within the Vasquez Site. This Complaint is based solely on Bottling Group, LLC's ownership and operation of such property. Plaintiff raises no separate action against Pepsi-Colo Metropolitan Bottling Co., Inc. While Pepsi objects to claims against both Pepsi defendants, given that this motion seeks dismissal of the entire Complaint, it does not distinguish between Pepsi-Cola Metropolitan Bottling Co. Inc and Bottling Group, LLC." (Docket No. 27 at 4 n.3).

5

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. See Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1191-92 (10th Cir. 2009). The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law. See Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

**Statute of Limitations**

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make it clear that the right sued upon has been extinguished." Zinn-Hoshijo v. Committee for Catholic Secondary Educ. in Colo., 2012 WL 629061, at *2 (D. Colo. Feb. 27, 2012) (internal quotations omitted). "[O]nce a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date." Escobar v. Reid, 668 F. Supp.2d 1260, 1287 (D. Colo. 2009).

CERCLA § 113(g)(3)(B) provides in pertinent part that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after . . . entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). Defendants Union Pacific and Pepsi both assert that plaintiff's

contribution claims raised in Claims One and Two are time barred because the United States Bankruptcy Court for the Southern District of Texas approved the settlement concerning the Vasquez Site on June 5, 2009, and this action was commenced more than three years later on December 10, 2012 (see Docket No. 2).

Plaintiff, however, asserts that its "direct contribution claims were brought within the limitations period because the amount of the Debtor's liability was not fixed, and the payment was not made, until after the Debtor's reorganization plan was confirmed by the Court and became effective pursuant to the confirmed plan's terms." (Docket No. 37 at 2 and section III.C.1; see Docket No. 40 at 2 and section III.C.1). Plaintiff contends that defendants' "argument ignores the fact that the Vasquez Settlement occurred in the context of the Debtor's bankruptcy and that, consequently, the June 5, 2009 orders were simply preliminary steps to the final resolution of the underlying claims and did not start the clock running." (Docket No. 37 at 6; see Docket No. 40 at 6). According to plaintiff, "the Bankruptcy Court's approval of a settlement allowing a proof of claim is the first step in the process, more akin to a liability opinion than a final order or judgment setting damages and requiring payment." (Docket No. 37 at 8; Docket No. 40 at 8). Plaintiff asserts that the June 5, 2009, Bankruptcy Court order did not fix the amount of Asarco's payment in resolution of the Vasquez Claim but instead "established only (1) the Debtor's liability for some amount of remediation costs at the Site and (2) a cap on what the total payment might be. . . . The amount that the Debtor would actually be required to pay to resolve its CERCLA liability was not yet fixed; nor could Debtor yet make any payments–unless and until a plan was confirmed and became effective." (Docket No. 37 at 7; Docket No. 40 at 7). The statute of limitations

was triggered, according to plaintiff, by the entry of the Confirmation Order and the occurrence of the Effective Date, December 9, 2009, which allegedly was when the Debtor's actual liability for the $1.5 million-plus in claims was fixed and payment could be, and was, made. Since December 9, 2012, was a Sunday, plaintiff asserts that the Complaint was timely filed on the next court day, Monday, December 10, 2012.

This court finds that the statute of limitations for the contribution claims was triggered on June 5, 2009, well over three years before the Complaint was filed. The plain language of CERCLA § 113(g)(3)(B) prohibits a contribution action more than three years after "the date . . . of entry of a judicially approved settlement." 42 U.S.C. § 9613(g)(3)(B). ASARCO LLC v. Atlantic Richfield Co., 2012 WL 5995662, at *2 (D. Mont. Nov. 30, 2012) ("The plain language of § 9613(g)(3)(B) contradicts ASARCO's contention that the statute of limitations did not begin to run until its Reorganization Plan was either approved by the Bankruptcy Court or became effective.") (citing ASARCO, LLC v. Hecla Min. Co., 2012 WL 5929962, *2 (E.D. Wash. Nov. 27, 2012) (rejecting a like argument)). Here, the Bankruptcy Court approved the Vasquez Settlement on June 5, 2009. (Docket No. 20-5). The Vasquez Settlement specifically provided that the agreement was "effective . . . upon approval by the Bankruptcy Court" (Docket No. 20-4 at 34, ¶ 35) and that the settlement "was not conditioned upon confirmation of any particular plan of reorganization." (Docket No. 20-4 at 5 - 5th unnumbered ¶). Furthermore, contrary to plaintiff's assertion, "the date a settling party makes payment is irrelevant." ASARCO LLC v. Atlantic Richfield Co., 2012 WL 5995662, at *2 (citing RSR Corp. v. Commercial Metals Co., 496 F.3d 552, 558 (6th Cir. 2007) ("[E]ven if the covenant regarding future response costs did not take effect until the remedial action

8

was complete, the statute of limitations for contribution runs from the 'entry' of the settlement, 42 U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect.")).

Two other courts have similarly discounted plaintiff's argument that in the bankruptcy context "entry of a judicially approved settlement" means approval of the Bankruptcy Plan. See ASARCO LLC v. Xstrata PLC, 2013 WL 2949046 (D. Utah June 14, 2013), and ASARCO LLC v. Atlantic Richfield Co., 2012 WL 5995662, at *2 (D. Mont. Nov. 30, 2012). This court finds the rulings in those two cases to be persuasive.

Since this action was commenced more than three years after June 5, 2009, plaintiff's contribution claims are time-barred.

**Subrogation Claim**

Plaintiff appears to be attempting to save its second claim for relief by asserting it is entitled to assert a contribution claim as a "subrogee" of the former Debtor-in-Possession ("Debtor"). Plaintiff, the Reorganized Debtor, claims it is a separate legal entity from the former Debtor and paid the Debtor's CERCLA liability. Therefore, plaintiff claims it is the Debtor's subrogee under the Bankruptcy Plan and applicable non-CERCLA case law and thus is subject to a different statute of limitations. This salvage attempt fails. This court agrees with the defendants that the Debtor and plaintiff ASARCO LLC are not separate legal entities for purposes of pursuing post-confirmation subrogation claims. Having paid its own debt, plaintiff is not entitled to assert a subrogation claim.

Plaintiff's reliance on certain language from In re Briscoe Enterprises Ltd. II, 138 B.R. 795, 809 (Bankr. N.D. Tex. 1992), that once a plan is confirmed, the "debtor"

ceases to exist (see Docket No. 40 at 11), is misplaced. The complete language used by the court provides, "upon plan confirmation, a debtor is no longer a debtor in possession and the bankruptcy estate ceases to exist. . . . In other words, the reorganized debtor is a new entity and not subject to the jurisdiction of the bankruptcy court, except as provided in the plan." In re Briscoe, 138 B.R. at 809 (citation omitted). When read in context, the bankruptcy court in that case was not discussing whether the post-confirmation entity was a separate legal entity as suggested by plaintiff under the circumstances presented here. Instead, the court in dicta was merely clarifying that the post-confirmation entity no longer has the powers of a debtor-in-possession, and the bankruptcy court's jurisdiction is limited to post-confirmation matters reserved under the plan. Plaintiff's similar reliance on language from In re United Operating, LLC, 540 F.3d 351 (5th Cir. 2008), is likewise misplaced.

"To determine whether or not the entities are the same the court must look to the substance of the Plan." Cross Media Marketing Corp. v. CAB Marketing, 367 B.R. 435, 451 (Bankr. S.D.N.Y. 2007). Here, the terms of the Plan establish that the plaintiff is the same legal entity as the Debtor and thus is not a subrogee. Defendants have shown that the provisions of the Bankruptcy Plan:

(1) defines "Reorganized Asarco," which is plaintiff here, to be one and the same as the Debtor as of the Effective Date. It defines "Reorganized ASARCO" as "ASARCO and/or any of its successors . . . on or after the Effective Date" (Docket No. 20-11 at 31, ¶ 298) and defines "ASARCO" as "ASARCO LLC" which is "a Delaware limited liability company and one of the Debtors herein" (Docket No. 20-11 at 5-6, ¶¶ 21, 25);

(2) continues the Debtor's corporate existence as Reorganized Asarco; it

provides that "Reorganized ASARCO shall continue its existence after the Effective Date" and the "equity interests in Reorganized ASARCO shall continue to be held by ASARCO USA Incorporated " (Docket No. 20-8 at 33, § 10.11);

(3) vests the claims and causes of action of the Debtor and the Estate in Reorganized ASARCO (Docket No. 20-8 at 33-34, § 10.12 ["Except as otherwise expressly provided in the Parent's Plan, on the Effective Date, all of ASARCO's and its Estate's property and assets shall vest in Reorganized ASARCO . . . ."] and § 10.13 ["Any and all claims and causes of action that were owned by ASARCO or its Estate as of the Effective Date . . . shall vest in Reorganized ASARCO on the Effective Date, and Reorganized ASARCO shall be the only Entity entitled to pursue such claims or causes of action. . . ."]); and

(4) maintains the Debtor's identical equity owners in Reorganized Asarco. (Docket No. 20-8 at 33, § 10.11) ("The equity interests in Reorganized ASARCO shall continue to be held by ASARCO USA Incorporated.").

Compare Cross Media, 367 B.R. at 451 (finding debtor and reorganized debtor were not distinct legal entities; Bankruptcy Plan provided that "Cross Media shall continue to exist as Reorganized Cross Media after the Effective Date . . . ." [compare to here - ""Reorganized ASARCO shall continue its existence after the effective date]; the assets of the debtor and estate were generally vested in the reorganized debtor, including the causes of action at issue; and the reorganized debtor had the right to pursue those causes of action).

Furthermore, CERCLA § 113(f) provides plaintiff its exclusive remedy. Defendant Union Pacific correctly asserts that the Supreme Court and every federal

circuit court to consider the issue have held that a party which "pays money to satisfy a settlement agreement or a court judgment" is limited to a § 113(f) contribution claim and "cannot simultaneously seek to recover the same expenses under § 107(a)." United States v. Atlantic Research Corp., 551 U.S. 128, 139 (2007). See Sun Co. Inc. (R&M) v. Browning-Ferris, Inc., 124 F.3d 1187, 1190-92 (10th Cir. 1997) (clarifying that § 113 is the mechanism for equitable apportionment of response costs referred to in § 107). (See also cases cited by Union Pacific at Docket No. 20, p. 8 n.18, and by Pepsi at Docket No. 27 at 6-8). "[C]laims between [Potentially Responsible Parties] to apportion costs between themselves are contribution claims pursuant to § 113 regardless of how they are plead . . . ." United States v. Colorado & Eastern R.R., 50 F.3d 1530, 1539 (10th Cir. 1995). "If a party . . . could simply repackage its § 113(f) claim for contribution as one for recovery under § 107(a), then the structure of CERCLA remedies would be completely undermined." Solutia, Inc. v. McWane, Inc., 672 F.3d 1230, 1236 (11th Cir.), cert. denied, 133 S. Ct. 427 (2012). In addition, it would allow potentially responsible parties to circumvent the different statutes of limitations that attach to § 113(f) contribution claims and § 107(a) recovery claims. Id.

In sum, plaintiff's contribution claims are barred by the applicable statute of limitations, and Claim Two is not available to plaintiff because plaintiff is not a subrogee. Therefore, the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants Union Pacific Railroad Company's and Union Pacific Corporation's Motion to Dismiss (Docket No. 20) be **GRANTED**. It is further

12

**RECOMMENDED** that Defendant Pepsi-Cola Metropolitan Bottling Co., Inc's and Bottling Group, LLC's Motion to Dismiss (Docket No. 27) be **GRANTED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  July 8, 2013                                s/ Michael J. Watanabe
       Denver, Colorado                            Michael J. Watanabe
                                                   United States Magistrate Judge